BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, et al. v. ATLANTIC COAST LINE R. CO.

Civ. No. 362.

United States District Court
E. D. North Carolina. Raleigh Division.

Jan. 24, 1950.

I. M. Bailey, Raleigh, N. C., Clem B. Holding, Raleigh, N. C., Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., Washington, D. C., Woodus Kellum, Wilmington, N. C., for plaintiffs.

116

M. V. Barnhill, Jr., Wilmington, N. C., Charles Cook Howell, Wilmington, N. C., for defendant.

GILLIAM, District Judge.

The action was filed by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees and others seeking a mandatory injunction against the defendant railroad ordering and requiring it to treat with the Brotherhood as the duly and legally selected representative of all of the members of the craft or class of employees known as clerical, office, station and storehouse employees, and to bargain with the Brotherhood in good faith and to make every reasonable effort to make agreements with the Brotherhood concerning rates of pay, rules and working conditions, and further to refrain from interfering with, influencing or coercing the members of the craft or class with respect to the exercise of their statutory right to free selection of a collective bargaining representative.

The complaint alleges that the plaintiff Brotherhood was on October 30, 1947, certified by the National Mediation Board as the duly designated and authorized representative of the craft or class of employees of the defendant railroad known as the "clerical, office, station and storehouse" employees. This certification was issued following an investigation by the Board and an election conducted by it in accordance with the provisions of Section 2, Ninth, of the Railway Labor Act, as amended June 21, 1934, 45 U.S.C.A. § 152, subd. 9.

The answer of the defendant admits the issuance of the Board's certification and certain other allegations in the complaint, but denies all allegations which relate to the alleged conduct of the defendant upon which the plaintiffs predicate their prayer for relief, and asks that the complaint be dismissed.

One J. E. Rose, Jr., and others filed a motion for leave to intervene as to both plaintiffs and defendant and a proposed intervenors' complaint. In both pleadings the petitioners for intervention allege in substance that they are entitled to intervene for the reasons that they are employees of the defendant and are members of a group of more than seven hundred employees who are now excepted from the existing agreement between the plaintiff Brotherhood and the defendant which became effective February 16, 1944; that they deny that the Brotherhood has any right or authority to bargain for them with respect to their wages, rules or working conditions; that the petitioners for intervention fairly and adequately represent the rights and interests of all persons now excepted from the scope rule of the existing agreement; that the intervenors may be bound by any judgment in this action; that petitioners for intervention are a separate craft or class of employees; that the classifying of the petitioners for intervention with other groups outnumbering them five to one was and is an unjust and wrongful violation of their rights and property; that they have never requested the plaintiff Brotherhood to represent them; that the National Mediation Board erroneously included their names in the list of eligible voters in the election conducted by the Board; that the notice furnished employees of the election was inadequate and the ballot prepared and used by the Board was improper, and that the plaintiffs are bound by the agreement of February 16, 1944, and are estopped from bringing this action and from representing the intervening petitioners and those in whose behalf they seek to intervene from representing the petitioners for intervention as to wages, rules or working conditions, from seeking conference or negotiation with defendant on their behalf, from invoking the services of the National Mediation Board with respect to them and from profiting from or asserting any right under the certification issued by the Board as a result of the election conducted by it.

The petitioners for intervention pray for a judgment, decreeing that plaintiffs are estopped from maintaining this action; that the ballot used at the election is void; that the plaintiff Brotherhood is not their authorized and designated collective bargaining representative; that they are a separate craft or class; that the Brotherhood

is and has been during all the times complained of without authority to negotiate with the defendant or report any dispute to the National Mediation Board on their behalf or assert any authority to act for them in any respect by virtue of the certification issued by the National Mediation Board issued October 30, 1947.

The merits of the case have not been reached and the only question now before the Court is that of whether the petitioners for intervention should be permitted to intervene as a matter of right or in the discretion of the court over the objection of plaintiff.

The rights which the petitioners claim in their petition for leave to intervene and would assert if they are permitted to intervene, are all predicated upon the Brotherhood's lack of authority to represent them in the negotiation of an agreement covering their rates of pay, rules and working conditions. They admit, however, that the Brotherhood has been certified by the National Mediation Board as the duly authorized representative of the craft or class of clerical, office, station and storehouse employees of the defendant railroad, and that such certification included the petitioners and those whom they purport to represent among the employees covered by such certification.

Section 2, Ninth, of the Railway Labor Act provides that "upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this Act."

In the case of Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 548, 57 S.Ct. 592, 600, 81 L.Ed. 789, the United States Supreme Court said: "The obligation imposed on the employer by Section 2 (Ninth) to treat with the true representative of the employees as designated by the Mediation Board, when read in the light of the declared purposes of the act and of the provisions of section 2, Third and Fourth, giving to the employees the right to organize and bargain collectively through the representative of their own selection, is exclusive. It imposes an affirmative duty to treat only with the true representative, and hence a negative duty to treat with no other * * *."

But the petitioners also allege certain irregularities in the Board's procedure regarding notice and the form of ballot used in the election, and ask that the court find that the Brotherhood was and is estopped from invoking the Board's services and is without authority to act for petitioners in any respect by virtue of the certification of the Mediation Board.

To grant the relief sought by petitioners if they are permitted to intervene, the court would be required to go behind the certification of the Board and declare it invalid if the mandate of Section 2, Ninth, of the Act is to be avoided.

Plaintiffs contend that certifications of the National Mediation Board are conclusive and not subject to review by the courts and cite Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. In that case it was contended that the Board should have permitted yardmen of certain designated parts of the carrier's system to vote for separate representatives instead of setting up the craft on a system-wide basis. The suit was brought to have the determination by the Board of the participants and the certification of representatives cancelled. It was held that the District Court had no power to review the action of the Board in issuing the certificate.

320 U.S. at page 304, 64 S.Ct. at page 99:

"The statutory mandate is that 'the carrier shall treat with the representative so certified.' § 2, Ninth. But the scheme of § 2, Ninth, is analogous to that which existed in Butte, A. & P. R. Co. v. United States, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222. * * * This Court, speaking through Mr. Justice Brandeis, held that since authority to interpret the statute was 'essential to the performance of the duty imposed upon the Commission' and since 'Congress did not provide a method of review', the Government, as well as the carrier, was 'remediless whether the error be one of fact or of law.' * * *

"In the present case the authority of the Mediation Board in election disputes to

interpret the meaning of 'craft' as used in the statute is no less clear and no less essential to the performance of its duty. The statutory command that the decision of the Board shall be obeyed is no less explicit. Under this Act Congress did not give the Board discretion to take or withhold action, to grant or deny relief. It gave it no enforcement functions. It was to find the fact and then cease. Congress prescribed the command. Like the command in the Butte, [A. & P. R. Co.] case it contained no exception. Here as in that case the intent seems plain—the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law."

320 U.S. at page 306, 64 S.Ct. at page 99: " * * * When Congress in § 3 and in § 9 provided for judicial review of two types of orders or awards and in § 2 of the same Act omitted any such provision as respects a third type, it drew a plain line of distinction. And the inference is strong from the history of the Act that that distinction was not inadvertent. The language of the Act read in the light of that history supports the view that Congress gave administrative action under § 2, Ninth, a finality which it denied administrative action under the other sections of the Act."

Petitioners contended that the decision in the Switchmen's case is not applicable in a case such as the one here under consideration. They point to the statement in the decision in that case that "what is open when a court of equity is asked for its affirmative help by granting a decree for the enforcement of a certificate of the [National] Mediation Board under § 2, (Ninth) raises questions not now before us."

The plaintiffs in this case, among other things, seek a mandatory injunction requiring the defendant to bargain with it as the duly designated and authorized representative of the craft or class of employees covered by the certification of the Board, and petitioners assert that since the action seeks affirmative relief in the form of a decree for the enforcement of a certificate of the Mediation Board it raises questions which were specifically reserved by the court in the Switchmen's case.

Assuming the contentions of petitioners to be valid, it would seem that the reasons advanced by the Supreme Court in holding the certifications of the Mediation Board not subject to judicial review are equally applicable in cases of this kind. The Supreme Court itself has so indicated in Order of Railway Conductors v. Pennsylvania R. Co., 323 U.S. 166, 65 S.Ct. 222, 89 L.Ed. 154. In that case it was contended that the Mediation Board had refused to perform its statutory duties when it conducted an election, without investigating charges of undue influence and coercion which it was alleged affected the outcome of the election upon which its certification was based. The relief prayed for in that case was similar to that which would be sought by petitioners if they are permitted to intervene here in that they in effect seek an annulment and cancellation of the Board's certification, a decree that the plaintiff Brotherhood is not representative of the involved employees notwithstanding the Board's certification, and that it is without authority to confer with the defendant or to act for or on behalf of the petitioners.

In the Conductors' case the court said, 323 U.S. at page 171, 65 S.Ct. at page 225:

"The first and second prayers for relief seek the annulment and cancellation of the board's certification and an injunction against board action. Plainly no such relief should be granted, if at all, in the absence of the board as a party. Because of the failure to appeal from the order dismissing it, the board is not, and never can be, a party to this cause, either here or in the courts below.

"The third, fourth, and fifth prayers in effect request a declaration that the plaintiff is the representative of the road conductors for bargaining notwithstanding the board's certification to the contrary. Since the election and certification could not be annulled without making the board a party, that result cannot be obtained by indirection by having the court substitute itself for the board, or declare, independently of the board, who is the accredited representative of the plaintiff.

"The sixth, seventh, and eighth prayers have a similar object. They ask an injunction to prevent the railroad from bargaining with trainmen and a mandatory injunction that it shall bargain with the plaintiff as representative of road conductors. *Such a decree would be in the teeth of the board's certification. To grant such a decree would seem to be in contravention of the Switchmen's Union of N. A. case* [320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61], supra, and in any event such action should not be taken in the absence of the board."

323 U.S. at page 172, 65 S.Ct. at page 225, " * * * The arguments in this case covered a wide range and embodied suggestions as to possible remedies should the board act or refuse to act on charges of coercion antecedent to election and on possible remedies to deprive an employer guilty of influence and coercion of the benefits of the election and the board's certification." (Emphasis supplied.)

Petitioners, if permitted to intervene, would in order to prevail require a decree which prevented the plaintiff Brotherhood from bargaining for the craft or class certified by the Mediation Board or the defendant from treating with the Brotherhood. Such a decree would be the same as that which the Supreme Court said in the Conductors' case "would be in the teeth of the board's certification" and one which "would seem to be in contravention of the Switchmen's Union [of North America case". In any event, it is made clear in the Conductors' case that such relief cannot be granted in the absence of the Mediation Board as a party, and since the Board is not a party to these proceedings, cannot be granted in the event petitioners are allowed to intervene here.

The alleged rights asserted by petitioners in the motion for leave to intervene and in the proposed intervenors' complaint are, it appears, not justiciable.

Intervention is sought under Rule 24 (a) and (b) and Rule 17 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The portion of Rule 24 (a) relied on by petitioners is that which allows intervention as a matter of right "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action".

In view of the conclusions which follow it is not necessary to pass upon the question of whether the representative of applicants' interests by existing parties is or may be inadequate or that applicants may be bound by a judgment entered herein. Petitioners for intervention are accorded the right to intervene only when the interest which they assert is a legal interest. "It is well settled that the only interest which will entitle a person to the right of intervention in a case is a legal interest as distinguished from interests of a general and indefinite character which do not give rise to definite legal rights". Radford Iron Co. v. Appalachian Electric Power Co., 4 Cir., 62 F.2d 940, 942.

Since it appears that the interest asserted by petitioners in this case is not a justiciable one they are not entitled to intervene as a matter of right.

Rule 24 (b) provides for permissive intervention but the granting of permissive intervention would, in view of the nonjusticiable nature of the petitioners' interest, be an idle thing. It is stated in Moore Federal Practice, Vol. 2, page 2370, that "the proposed complaint or answer of the intervenors must state a well pleaded claim or defense. On application for intervention, the well pleaded allegations will be taken as true. Ordinary rules will control the interpretation of the pleading." It is exceedingly doubtful that the court in this case could properly grant permissive intervention in this case in view of the nonjusticiable nature of the allegations in the motion for leave to intervene, and the intervenors' complaint even if it were disposed to do so. But even if permissive intervention was granted the intervenors' complaint does not state a well pleaded claim or defense in view of the authorities cited above and the grant of intervention would be futile. This court is without power to declare the election ballots void, at least in the absence of the Mediation Board as a party, to decree that the Brotherhood is

not the duly designated collective bargaining representative of the petitioners, to decree that petitioners constitute a separate craft or class or that the Board erroneously classified them in a class or craft represented by the Brotherhood, or in view of the mandate of Section 2, Ninth, of the Railway Labor Act to decree that the Brotherhood is estopped from representing the petitioners with respect to their wages, rules and working conditions, to find that the Brotherhood is estopped from conferring with the defendant for the purposes of the Railway Labor Act, or from reporting any dispute to the Board.

The motion for leave to intervene, both as a matter of right and as a permissive intervention, is denied, and an order accordingly has been entered.